UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK A. C.,[1] | ) | CIVIL ACTION NO. 4:22-CV-0690 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Mark A. C., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating  42 U.S.C. §405(g) by reference).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED and this case will be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g). This result is required because the ALJ failed to explain why he rejected a treating physician's opinion that Plaintiff's combination of symptoms would likely mean he would be off-task 25% of time.

## II.   BACKGROUND & PROCEDURAL HISTORY

On February 16, 2016, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Doc. 16, p. 1).  In this application, Plaintiff alleged he became disabled on October 15, 2012, when he was 39 years old due to arthritis in his right hand and neck, bulging discs in his back, chronic lymphocytic leukemia (stage 2), two herniated discs in his back and muscle spasms in his back. (Admin. Tr. 320; Doc. 15-6, p. 7; Doc. 16, p. 3). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, climb stairs, complete tasks, concentrate, use his hands, and get along with others.[2] (Admin. Tr. 22; Doc. 15-2, p. 23). Plaintiff has at

---

[2] This is the list the ALJ gives in his decision and so the Court reproduces it here. The ALJ cites to Exhibit 4E (Admin Tr. 344-351, Doc. 15-6, pp. 31-38) which is an Adult Function Report that appears to have been filled out on Plaintiff's behalf by Catherine Wilcox. (Admin Tr. 22; Doc. 15-2, p. 23). The Report is written in the

least a high school education. (Admin. Tr. 27; Doc. 15-2, p. 28). Plaintiff has no past

relevant work. *Id*.

On September 1, 2016, Plaintiff's application was denied at the initial level of

administrative review. (Admin Tr. 168; Doc. 15-4, p. 4). On September 15, 2016,

Plaintiff requested an administrative hearing. (Admin. Tr. 172; Doc. 15-4, p. 8). On

March 14, 2018, Plaintiff, through a brief written by his representative Andrew S.

Youngman, amended his alleged onset date to September 1, 2015, when Plaintiff

was 42 years old. (Admin. Tr. 398; Doc. 15-6, p. 85).

On March 22, 2018, Plaintiff, assisted by his counsel, appeared and testified

during a hearing before Administrative Law Judge Mike Oleyar. (Admin Tr. 86-123;

Doc. 15-2, pp. 87-124); (Doc. 16, p. 1). On July 10, 2018, Judge Oleyar issued a

decision denying Plaintiff's application for benefits. (Admin Tr. 139-157; Doc. 15-

3, pp. 17-35); (Doc. 16, p. 1). On December 27, 2019, the Appeals Council remanded

the case back to a new Administrative Law Judge for another hearing. (Admin Tr.

161; Doc. 15-3, p. 39); (Doc. 16, p. 1).

On August 25, 2020, Plaintiff, assisted by his counsel, appeared and testified

during a second hearing before Administrative Law Judge Edward L. Brady (the

---

first person as though Ms. Wilcox was transcribing what Plaintiff was dictating.
Later in his decision, however, the ALJ evaluates this form as a third-party function
report. (Admin Tr. 26; Doc. 15-2, p. 27).

"ALJ"). (Admin. Tr. 15, 30; Doc. 15-2, pp. 16, 31). On October 15, 2020, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 16-31; Doc. 15-2, pp. 16-31). On December 7, 2020, Plaintiff requested that the Appeals Council review the ALJ's decision. (Admin. Tr. 285; Doc. 15-4, p. 121).

On March 14, 2022, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-3; Doc. 15-2, p. 2-4).

On May 10, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's October 2020 decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court find Plaintiff is entitled to Supplemental Security Income benefits or remand the case for further hearing. (Doc. 1, p. 2).

On July 14, 2022, the Commissioner filed an answer. (Doc. 14). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 14). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 15).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 20), and Plaintiff's Reply (Doc. 21 ) have been filed.  This matter is now ready to decide.

### III.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[6] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] In determining if the Commissioner's decision is supported

---

[3] *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8] The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon.[9]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the

---

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review).")

[9] L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

substantial-evidence standard to the deferential clearly-erroneous standard).[10]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[11] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[12]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular

---

[10] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[11] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[12] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[13]

**B.  STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[14] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[15]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do

---

[13] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).
[14] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).
[15] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).
[16] 20 C.F.R. § 416.920(a).

any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[20] Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[21]

---

[17] 20 C.F.R. § 416.920(a)(4).

[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[19] 20 C.F.R. § 416.945(a)(2).

[20] 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064.

[21] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)    The ALJ's RFC determination is not supported by substantial evidence because the ALJ crafted the RFC out of whole cloth and made his own lay interpretation of objective evidence without the guidance of a medical professional. (Doc. 16, pp. 8-13; Doc. 21, pp. 1-3).

(2)    The ALJ's mental RFC determination is not supported by substantial evidence because the ALJ failed to account for Plaintiff's moderate limitations in concentration, persistence and pace. (Doc. 16, pp. 13-15; Doc. 21, pp. 3-5).

The Court agrees with the Commissioner's evaluation that Plaintiff's "sole argument on appeal involves whether substantial evidence supports the ALJ's RFC assessment." (Doc. 20, p. 6). We begin our analysis by summarizing the ALJ's finding, then will address whether the ALJ's decision was supported by substantial evidence.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In his October 2020 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between September 1, 2015 (Plaintiff's alleged onset date) and October 15, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 15; Doc. 15-2, p. 16).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: Cervical and lumbar degenerative disc disease, Chronic Lymphocytic Leukemia (CLL) Stage 2, bilateral carpal tunnel syndrome, degenerative joint disease of right hand status-post right hand surgery, insomnia, major depressive disorder, generalized anxiety disorder, and alcohol abuse (20 CFR 416.920(c)). (Admin. Tr. 18; Doc. 15-2, p. 19).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18-21; Doc. 15-2, pp. 19-22).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 416.967(a) subject to the following additional limitations:

> The claimant requires a sit/stand option every 30 minutes. The claimant can perform up to frequent fine and gross manipulation with the bilateral upper extremities with no overhead reaching with the bilateral upper extremities. The claimant can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant should avoid work at unprotected heights or around dangerous moving mechanical parts or machinery. The claimant is limited to detailed, but uninvolved work, generally described as simple and routine. The claimant could have occasional changes to work routine and setting. The claimant is limited to

occasional interaction with the public and frequent interaction with coworkers and supervisors.

(Admin. Tr. 21; Doc. 15-2, p. 22).

At step four, the ALJ found that Plaintiff has no past relevant work. (Admin. Tr. 27; Doc. 15-2, p. 28).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 27-30; Doc. 15-2, p. 28-31). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: Document preparer (DOT# 249.587-018); Surveillance system monitor (DOT# 379.367-010); and Addresser (DOT# 209.587-010). (Admin. Tr. 28; Doc. 15-2, p. 29).

**B.**   **WHETHER THE ALJ'S RFC DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff argues the ALJ's RFC determination is not supported by substantial evidence. (Docs. 16, 21). More specifically, Plaintiff asserts that the ALJ failed to account for treating source Dr. Nasir's opinions[22] that Plaintiff would be off-task 25% of the time. (Doc. 16, pp. 12-13). Plaintiff argues that:

---

[22] Three treating source statements completed by Dr. Nasir giving his opinion of Plaintiff's residual functional capacity appear in the record. (Admin Tr. 1162-

[h]ad moderate limitations in concentration, persistence and pace been properly accounted for in the RFC, Plaintiff may have been found disabled pursuant to SSR 85-15. Dr. Nasir, Plaintiff's treating physician, found Plaintiff would be off-task 25% of the workday due to his impairments and symptoms. T 1162. Likewise, the vocational expert testified that an individual who was off task up to 20% of the workday would be unable to perform any work. T 80.

(Doc. 16, p. 14). Although seemingly misplaced and labeled as an error in the 'mental' RFC determination, the Court believes it is adequately clear Plaintiff is asserting that the lack of accounting for Dr. Nasir's physical functional assessment that Plaintiff would be off-task 25% of the time in the RFC was harmful error.

The Commissioner argues that "[t]hroughout his decision, the ALJ identified the substantial evidence that supported the RFC." (Doc. 20, pp. 7-8). The Commissioner asserts that "the ALJ discussed Dr. Nasir's January 2018, June 2020, and July 2020 opinions which, overall, the ALJ found deserved little weight due to

---

1165, 2461-2464, 2467-2470; Doc. 15-7, pp. 644-647; Doc. 15-8, pp. 472-475, 478-481). The first is dated January 11, 2018. (Admin Tr. 1162-1165; Doc. 15-7, pp. 644-647). The second is undated by Dr. Nasir's signature, however bears the date June 4, 2020 by electronic type upside down on the bottom of the page. (Admin Tr. 2461-2467; Doc. 15-8, pp. 472-475). It is unclear whether this is the date the document was filled out or the date the document was faxed. The third bears the date of July 13, 2020 by Dr. Nasir's signature and also has that date in electronic type upside down on the bottom of the page. (Admin. Tr. 2467-2470; Doc. 15-8, pp. 478-481). The Court notes that the June 4, 2020 statement and July 13, 2020 statement look to be copies of the same statement. Nevertheless, at least two opinions from Dr. Nasir are in the record.

their inconsistency with the record." (Doc. 20, p. 13). The Commissioner further argues,

> The inconsistencies between Dr. Nasir's limitations and the objective findings cited by the ALJ constitute far more than a mere scintilla of evidence to support his factual finding that Dr. Nasir's opinions warranted little weight overall. Significantly, the ALJ explained why many of Dr. Nasir's opinions *underestimated* Plaintiff's degree of functional limitation (Tr. 27).

(Doc. 20, p. 18) (emphasis in original).

Plaintiff responds to the Commissioner's arguments on this point by reasserting the arguments made in his brief in support. (Doc. 21).

The Court agrees with Plaintiff that the ALJ failed to account for the portion of Dr. Nasir's opinions that Plaintiff's "symptoms" were likely to be "severe enough to interfere with the attention and concentration needed to perform even simple work related tasks" 25% of the time. (Admin. Tr. 1162; Doc. 15-7, p. 644) (Doc. 16, p. 14). The ALJ was entitled to account for this portion of Dr. Nasir's opinions by rejecting them as inconsistent with the record, even with Dr. Nasir being Plaintiff's treating physician.[23] That said, "[a]lthough the ALJ may weigh the credibility of

---

[23] This claim was filed before March 27, 2017. Accordingly, "[u]nder applicable regulations and the law of this Court, opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d. Cir. 2001) (citing 20 C.F.R. § 404.1527(d)(2); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981)). A treating physician's opinion on the nature and severity on the claimant's impairment(s) is entitled to controlling weight when it is "well-supported by medically acceptable

the evidence, he must give some indication of the evidence that he rejects and his reason(s) for discounting that evidence."[24] As it relates to Dr. Nasir's opinions that Plaintiff would be off-task 25% of the day, the ALJ did not do so.

"[T]he ALJ cannot reject evidence for no reason or for the wrong reason," meaning "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper."[25] In this case, it is unclear why the ALJ, apparently implicitly, rejected the portion of Dr. Nasir's opinions that Plaintiff would be off-task 25% of the day. While the ALJ does explain why he rejected the other portions of Dr. Nasir's opinions, the ALJ fails to mention the off-task portion of the opinions his decision. The ALJ's explanations for why he assigned little weight to Dr. Nasir's opinions were quite specific as to which portions of the opinion he was rejecting:

> The undersigned has considered January 2018, June 2020, and July 2020 treating source statements from Mahmood Nasir, M.D., which, overall, the undersigned affords little weight, as it, is inconsistent with

---

clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record . . . ." 20 C.F.R. § 416.927(c)(2). "An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (citing *Newhouse v. Heckler*, 753 F.2d 283, 286 (3d Cir.1985)). However, a treating physician's opinion "does not bind the ALJ on the issue of functional capacity." *Brown v. Astrue*, 649 F.3d 193, 196 n.2 (3d Cir. 2011).

[24] *Fargnoli*, 247 F.3d at 43.

[25] *Cotter*, 642 F.2d at 706-07 (footnote omitted).

the record (Exhibits 10F; 17F; 18F). Preliminarily, while Dr. Nasir limited the claimant to sitting/standing/walking of less than (2) hours each during an eight-hour workday, yet, contrarily, he opined that the claimant could rarely-occasionally climb ladders and scaffolds, which is inconsistent with the standing and walking limits of 2 hours each. Clearly climbing ladders and scaffolding for up to 1/3 of an eight hour workday would be much more strenuous that standing or walking 2 hours. (Exhibit 10F/7, 8; 17F; 18F; Hearing Testimony). Furthermore, despite the claimant's cervical spine and right hand impairments as evidenced in diagnostic imaging, Dr. Nasir opined that the claimant could occasionally reach overhead and push/pull with his left upper extremity and that he would have no limitation in use of his right upper extremity (Exhibit 1F/61, 2F/15, 3F/89, 7F/46, 10F/8; 17F; 18F). Finally, despite the claimant's complaints of radicular pain in his right leg and past incidence of syncope, Dr. Nasir opined that the claimant could have occasional exposure to unprotected heights, moving mechanical parts, and frequently operate a motor vehicle (Exhibits 1F/6, 8F/56, 10F/9; 18F; Hearing Testimony). In addition to not being well supported by the evidence, Dr. Nasir does not really provide any basis for this check-the-box opinion other than to provide these limitations without explanation. All of these objective inconsistent limitations by Dr. Nasir make his opinion less persuasive and thus little weight is afforded to the same.

(Admin Tr. 27; Doc. 15-2, p. 28).

Although the ALJ states that he was affording little weight to the opinion "overall" and states that "in addition to not being well supported by the evidence, Dr. Nasir does not really provide any basis for this check-the-box opinion other than to provide these limitations without explanation," it is unclear if the ALJ meant for this to apply to the off-task portion of the opinions because the ALJ never references the off-task portion, or if that statement only applied to the specific limitations mentioned earlier in the paragraph. (Admin. Tr. 27; Doc. 15-2, p. 28).

Page 16 of 19

It may well be that the ALJ intended his explanation of why he rejected the other portions of Dr. Nasir's opinions to apply to the off-task portion of Dr. Nasir's opinions and account for them in that manner. Without mention of the off-task portion of the opinions, however, the Court cannot be sure the ALJ considered that portion of the opinions in crafting the RFC. Nor can the Court evaluate the ALJ's reasoning for rejecting the off-task portion of Dr. Nasir's opinions. "The ALJ's failure to explain his implicit rejection of this evidence or even to acknowledge its presence was error."[26] The ALJ's conclusion is therefore not supported by substantial evidence.[27]

The Court cannot say this error was harmless. The ALJ appears to have been aware of the off-task portion of Dr. Nasir's opinions and to have recognized the potential significance to a disability finding as he asked the vocational expert about the vocational consequences of Plaintiff being off task 25% of the day.

> Q    Sure. If this individual would -- would be off task up to 20% of the work days, secondary, is having to take additional breaks from lunch and – normal daily breaks, would an employer tolerate that?
>
> A    Based upon my experience, not contemplating the DOT, if an individual is off task to that degree, none of those jobs could be performed.

---

[26] *Cotter*, 642 F.2d at 707 (3d Cir. 1981) (footnote omitted).
[27] *See Dobrowolsky v. Califano*, 606 F.2d 403, 406 (3d Cir. 1979).

(Admin. Tr. 80; Doc. 15-2, p. 81). The ALJ failed to account for a portion of Plaintiff's treating physician's opinions that, if credited, would appear to be, according to the testimony of the vocational expert, work preclusive. Thus, the Court cannot say that the failure to account for the off-task portion of Dr. Nasir's opinions was not harmful error. Remand is therefore required.

### C.   PLAINTIFF'S OTHER ARGUMENTS

Given that the Court finds it necessary to remand Plaintiff's case because the ALJ's decision is not supported by substantial evidence on the off-task question, the Court will not address Plaintiff's other claims of error.[28]

[The next page contains the Conclusion]

---

[28] *See Burns v. Colvin*, 156 F. Supp. 3d 579, 598 (M.D. Pa. Dec. 30, 2015) (Cohn, M.J.), *report and recommendation adopted*, 156 F. Supp. 3d at 582 (M.D. Pa. Jan. 13, 2016) (Kane, J.) (explaining that "[a] remand may produce different results on these claims, making discussion of them moot.").

## V.    CONCLUSION

Accordingly, I find that Plaintiff's request for remand for a further hearing should be GRANTED as follows:

(1)    The final decision of the Commissioner is VACATED.

(2)    This case is REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in favor of Mark A. C.

(4)    An appropriate order will be issued.

Date: September 26, 2023                    BY THE COURT

                                            *s/William I. Arbuckle*
                                            William I. Arbuckle
                                            U.S. Magistrate Judge